Phillip FRY, Susan Fry, Plaintiffs–Appellees,

v.

Olin MELARAGNO, David W. Otto, Mark Barnes, Mark Pendery, Defendants–Appellants.

No. 90–15665.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1991.

Decided July 29, 1991.

---

Joan I. Oppenheimer, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Larrie A. Carmichael, Hurricane, Utah, for plaintiffs-appellees.

Phillip Fry and Susan Fry, pro se.

Before ALARCON and RYMER, Circuit Judges, and McDONALD, District Judge.*

* The Honorable Alan A. McDonald, United States District Judge for the Eastern District of Washington, sitting by designation.

RYMER, Circuit Judge:

Phillip and Susan Fry brought this action against various officials of the Internal Revenue Service (IRS), a Special Assistant United States Attorney and other persons who were not federal officials, alleging violations of constitutional rights. Three IRS attorneys and one IRS revenue agent now appeal from the district court's denial of their claim of qualified immunity. We reverse and remand with instructions to dismiss the complaint against these defendants insofar as it seeks to impose damage liability.

I

Phillip Fry is a tax accountant and an author. He has written several publications discussing methods of minimizing one's tax liabilities,[1] has appeared on television and radio programs, has testified against the current gift and estate tax structure in congressional hearings and has marketed a variety of tax shelters. In 1986, Fry was charged in a seventeen-count indictment with conspiracy to defraud the government and other tax-related offenses based on selling illegal tax shelters. Fry pled guilty to one count of conspiracy and received a five-year sentence, which the Sixth Circuit affirmed. See *United States v. Fry*, 831 F.2d 664 (6th Cir.1987).

While Fry was in jail, the IRS audited his and his wife Susan's income tax returns for the years 1977 to 1980. The IRS determined that the Frys owed a substantial amount of taxes and sent them notices of tax deficiencies. The Frys challenged these deficiencies in Tax Court. The Tax Court litigation was resolved adversely to Fry during the pendency of this appeal. See *Fry v. Commissioner*, 61 T.C.M. (CCH) 1812 (1991).

In 1989, the Frys, proceeding pro se, brought this *Bivens*[2] action for damages, declaratory and injunctive relief against thirteen federal defendants and two non-federal defendants claiming violations of their first, fourth and fifth amendment rights. The 74–page complaint charges that various IRS employees, revenue agents and attorneys had acted against them in retaliation for the Frys' extensive exercise of first amendment rights.[3] The federal defendants moved to dismiss the action on the grounds of improper service of process, lack of personal jurisdiction, insufficient pleading specificity, failure to state a claim and qualified immunity. The district court granted the motion in part, dismissing the action, without prejudice, as to nine of the federal defendants on grounds of improper service.[4] The court also dismissed the fifth amendment due process claims on the grounds that a *Bivens* action is not available when Congress has provided a comprehensive remedial scheme. With regard to the federal defendants' claim of immunity from suit, the district court held that it was "too early to resolve this issue" and that the "complaint details the manner which various defendants violated Fry's clearly established

---

**1.** Some of his titles, most coauthored with his wife Susan Fry, include: *Pay No Income Taxes Without Going to Jail, Our Lady of Perpetual Deductions: How to Cut Your Taxes by Establishing Your Own Church, How to Disinherit the IRS & Probate Court, Blood Taxes At Harvest Times* and *How to Find & Profit from Real Estate Bargains.*

**2.** *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**3.** The complaint alleges that the defendants committed overt acts against both him and his wife in an effort to:
(1) prosecute and imprison Fry on trumped-up tax fraud charges; (2) keep Fry in prison for as long as possible; (3) make Fry's prison life as difficult as possible; (4) financially

ruin Fry and his wife Susan by issuing trumped-up, incorrect, multi-million dollar Notices of (tax) Deficiency against the Frys, ...; (5) engage in unfair actions during the Frys' Tax Court case in their effort to obtain a wrongful multi-million dollar Tax Court judgment against the Frys; and (6) try to prevent Fry from resuming his career as a tax accountant, writer, and speaker when he was released from federal prison in July, 1989. Complaint ¶ 1 at 2–3. The remainder of the complaint detailed the specific actions of each of the defendants taken in what Fry has termed a "lawless and arbitrary vendetta fueled by the power of the state."

**4.** The defendants who allegedly violated the Frys' fourth amendment rights were among those dismissed from the suit.

First Amendment rights and defendants obviously have not come forward with controverting evidence."

Defendants Otto, Barnes and Pendery, the IRS attorneys who represented the Commissioner of Internal Revenue in the Frys' Tax Court case, and Melaragno, an IRS revenue agent who participated in the audit and investigation of the Frys and also testified at the Tax Court trial, remained in the case. These four defendants now appeal the district court's holding that they do not enjoy immunity from suit.

## II

■■■ Although an order denying a motion to dismiss is not a "final decision" as that term is ordinarily used in 28 U.S.C. § 1291, the denial of a claim to qualified immunity is appealable under the collateral order doctrine recognized in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), notwithstanding the absence of a final judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Todd v. United States*, 849 F.2d 365, 368 (9th Cir.1988). Whether these defendants are entitled to either absolute or qualified immunity presents a legal question which we examine de novo. *Todd*, 849 F.2d at 368; *White by White v. Pierce County*, 797 F.2d 812, 814 (9th Cir. 1986).

## III

■■■ The government contends that the action against the four remaining defendants must be dismissed on grounds of absolute immunity. The government ac-

knowledges that it did not make this argument in the district court, but urges us to consider the issue on appeal. As a general rule, we will not consider an issue raised for the first time on appeal, although we have the power and discretion to do so. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985); *In re Wind Power Systems, Inc.*, 841 F.2d 288, 290 n. 1 (9th Cir.1988). We will exercise this discretion when the "issue presented is purely one of law and either does not depend on the factual record developed [in the district court], or the pertinent record has been fully developed." *Bolker*, 760 F.2d at 1042. Because the issue of whether these defendants enjoy absolute immunity is a purely legal question, which may be dispositive of some of the claims, we are satisfied that it would be appropriate to consider the issue in this case.[5]

### A

■■■ When considering claims of governmental immunity, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, — U.S. ——, ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("For executive officials in general ... our cases make plain that qualified immunity represents the norm"). In some instances, however, the Supreme Court has determined that certain government officials require absolute immunity from liability in order to enable them to function independently and effectively, without fear of intimidation or harassment.[6] Accordingly,

---

5. Our decision to address the issue of absolute immunity is also consistent with the policy of protecting certain government officers from the obligation of having to defend suits stemming from the exercise of their official duties. "[T]he essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815. Moreover, given that a claim of absolute immunity could be interposed again on a motion for summary judgment, judicial economy favors the resolution of this legal issue now, rather than on a subsequent interlocutory appeal. *See Kennedy*

*v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir.1986) (noting that because *Mitchell* contemplates that immunity may be raised before trial on both a motion to dismiss and for summary judgment, "it is possible that the progress of civil rights actions ... may be interrupted by not one but two interlocutory appeals"), *cert. denied*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

6. In doing so, the Court employs a "functional" approach. *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). As the Court explained, "Under that approach, we ex-

the Court has granted absolute immunity to "the President, judges, prosecutors, witnesses, and officials performing 'quasi-judicial' functions, and legislators." *Mitchell,* 472 U.S. at 520, 105 S.Ct. at 2812 (citations omitted).

■ The Frys' allegations against the IRS attorneys are based solely upon the attorneys' official conduct representing the government in the litigation in the Tax Court of *Fry v. Commissioner.* It is therefore the government's position that these attorneys fall within the class of government officials whose connection with the judicial process entitles them to absolute immunity. We agree.

We addressed the immunity of government attorneys involved in civil tax litigation in *Flood v. Harrington,* 532 F.2d 1248 (9th Cir.1976), a case with facts strikingly similar to those here. In that case, Dr. Flood brought suit against four federal government attorneys, one agent of the IRS and one private attorney for alleged violations of his constitutional rights. Flood had tried repeatedly to frustrate the IRS's efforts to collect his income taxes and he filed suit after the IRS sought to collect tax deficiencies assessed against him. *Id.* at 1249–50. The district court dismissed his action with prejudice. *Id.* at 1250.

On appeal, we noted that "[f]rom the pleadings it is clear that [Flood's] allegations against [the] defendants ... were based entirely upon their official conduct as attorneys for the government." *Id.* We then considered *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), in which the Court held that "in initiating a prosecution and in presenting the State's case," the state prosecuting attorney is absolutely immune from a civil suit for damages under 42 U.S.C. § 1983. *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95. After concluding that the differences between a state criminal prosecution and federal civil tax litigation did not undermine the reasons justifying the application of absolute immunity, we held that "the doctrine of absolute immunity protects the defendant attorneys in this case if their allegedly improper conduct was 'intimately associated with the judicial phases' of Flood's tax litigation." *Flood,* 532 F.2d at 1251 (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994). Finding this to be the case "without question," we affirmed the district court's dismissal of Flood's action. *Id.*

Subsequent decisions confirm the continuing vitality of *Flood.* Of particular significance is *Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978), in which the Supreme Court extended absolute immunity to agency officials performing adjudicatory and prosecutorial functions. In *Butz,* a commodities merchant sued the Secretary of Agriculture and several other officials for issuing a complaint against him without following proper procedures and causing injury to his business and reputation. *Id.* at 481–83, 98 S.Ct. at 2897–98. The Court analogized administrative proceedings to criminal prosecutions, reasoning that an "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* at 512–13, 98 S.Ct. at 2914. The Court therefore held that agency officials such as an administrative law judge or federal hearing officer, officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudica-

---

amine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* The Court also considers three factors in determining whether a government official should be given absolute immunity for a particular function: (1) whether there is "a historical or common law basis for the immunity in question;" (2) whether performance of the function poses a risk of harassing or vexatious litigation against the official; and (3) whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. *Mitchell,* 472 U.S. at 521–22, 105 S.Ct. at 2812–13; *see also Burns,* 111 S.Ct. at 1942–44. The official seeking immunity bears the burden of showing that such immunity is justified for the function in question. *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542.

tion, and agency attorneys who conduct trials and present evidence on the record to the trier of fact are absolutely immune from liability in damages for their decisions. *Id.* at 513–17, 98 S.Ct. at 2914–16.[7]

With regard to agency attorneys, the Court would "see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court." *Id.* at 516, 98 S.Ct. at 2916. The Court explained:

> In either case, the evidence will be subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel. Evidence which is false or unpersuasive should be rejected upon analysis by an impartial trier of fact. If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents.... We therefore hold that an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence.

*Id.* at 516–17, 98 S.Ct. at 2916. Similarly, we see no reason why these same principles should not apply to government attorneys involved in civil tax litigation.

We therefore agree with the Second Circuit, as it stated in *Barrett v. United States*, 798 F.2d 565, 572–73 (2d Cir. 1986), that the principles outlined in *Butz* should a fortiori apply to the government attorney's initiation and handling of civil litigation in a state or federal court. Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is "necessary to assure that ... advocates ... can perform their respective functions without harassment or intimidation." *Butz*, 438 U.S. at 512, 98 S.Ct. at 2913. Given the similarity of functions of govern-

ment attorneys in civil, criminal and agency proceedings, and the numerous checks on abuses of authority inherent in the judicial process, we reiterate our statement in *Flood* that "[t]he reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action." 532 F.2d at 1251 (citation omitted). If the government attorney is performing acts "intimately associated with the judicial phase" of the litigation, that attorney is entitled to absolute immunity from damage liability.

The Court's recent decision in *Burns* confirms that the touchstone of this immunity is whether the attorney's actions are "intimately" or "closely" associated with the judicial process. *See Burns*, 111 S.Ct. at 1942–44. In *Burns*, the Court held that the absolute prosecutorial immunity recognized in *Imbler* clearly covered appearances before a judge and presenting evidence in support of a motion for a search warrant at probable cause hearings, but did not extend to giving advice to the police in the investigative phase of a criminal case. The purpose behind absolute immunity is to "free the *judicial process* from the harassment and intimidation associated with litigation." 111 S.Ct. at 1943 (emphasis in original). Because the giving of legal advice was not necessarily subject to one of the most important checks on abuses of authority, the "crucible of the judicial process," and was not so closely connected with that process, the Court concluded that it did not qualify for absolute immunity. *Id.* at 1944 (quoting *Imbler*, 424 U.S. at 440, 96 S.Ct. at 999 (White, J., concurring in judgment)).

With the foregoing in mind, we turn to the case at hand. The Frys' allegations against Otto, Barnes and Pendery are based entirely upon their official conduct as attorneys for the IRS in the Tax Court litigation. The alleged wrongful acts include statements about and repeated references to the Frys' first amendment activities (books, pamphlets, speeches, seminars,

---

7. The Court also deemed it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under

§ 1983 and suits brought directly under the Constitution against federal officials." *Butz,* 438 U.S. at 504, 98 S.Ct. at 2909.

TV and radio appearances and testimony in congressional hearings) in various papers filed with the Tax Court, including a Motion to Continue the Tax Court trial, a Request for Admissions, a response to interrogatories, the Trial Memorandum and the "Respondents' Brief." The Frys also complain about questions concerning these activities during discovery and at the Tax Court trial (to which they entered several successful objections on relevance grounds[8]), the government's calling as a witness the host of a talk show on which Fry had appeared, the government's plans to call as a witness a writer whom Fry had solicited to write a book on sex and the government's subpoenaing all books the Frys had written. Finally, the Frys complain of misrepresentations and mischaracterizations in briefs and other court filings.

This conduct, all of which occurred during the adjudication of their tax liabilities and as part of the government's presentation of evidence against them, undoubtedly is "intimately associated with the judicial phases" of the tax litigation. We therefore uphold the IRS attorney defendants' claim of absolute immunity. *See Butz,* 438 U.S. at 516–17, 98 S.Ct. at 2915–16; *Flood,* 532 F.2d at 1251; *Carlsberg v. Gatzek,* 442 F.Supp. 813, 817 (C.D.Cal.1977) (in action against SEC attorneys, "The filing of the PBL complaint and the prayer for relief included therein, the requests for preliminary injunction, the filing of the allegedly false affidavit, and the inclusion of allegedly false statements in the complaint and other pleadings are all actions which clearly fall within this area of absolute immunity."). The proper forum for challenges to these allegedly improper actions is in the adversary proceedings where they take place, or if warranted, in professional disciplinary proceedings, not in a separate suit for damages.

---

**8.** The judge sustained the Frys' objections to this material, and at one point stated that "the fact that a person protests against the tax laws or writes literature about the tax laws has no relevance as to whether they owe taxes in a particular year. . . ." Complaint ¶ 80, at 42.

## B

▮▮▮▮ With regard to defendant Melaragno, he does not enjoy absolute immunity as an IRS revenue agent. *See Todd,* 849 F.2d at 368 n. 6.[9] Rather, in the performance of his official duties, he, like most executive officials, is entitled only to qualified immunity.

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court refined this objective standard, instructing that the right alleged to have been violated must exist in a "particularized" and not general sense, and that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. Therefore,

> [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. . . . The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original).

The complaint describes Melaragno as "a revenue agent for the I.R.S. who spent many years investigating the tax planning and First Amendment-protected activities of Fry." Complaint ¶ 8, at 5. Specifically, Fry complains that Melaragno conspired

---

**9.** Melaragno is entitled to absolute immunity to the extent the allegations against him pertain to his testimony as a witness in the Tax Court trial. *See Mitchell,* 472 U.S. at 520, 105 S.Ct. at 2812; *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913. We therefore focus on the allegations describing his other allegedly improper actions.

with others to charge him with false criminal charges; that with two other defendants he inserted into the prosecutor's version of the presentence report details about his first amendment activities which encouraged parole commission employees to retaliate against Fry and keep him in prison twice as long as the prosecutor had promised; intentionally lied and made misrepresentations to the probation officer preparing his presentence report; and helped the attorneys and investigators gather evidence for the tax litigation which included the book on sex.

Although Melaragno was involved in the investigation of the Frys, he does not have authority to cause criminal charges to be brought. As a result, Melaragno, like agent Harrington in the *Flood* case, "cannot be held liable for 'causing' the prosecution in [*United States v. Fry*]. The responsibility for that prosecution lay with the United States Attorney General or his delegate." *Flood*, 532 F.2d at 1251.

Frys' other allegations against Melaragno do not survive the requirement that the pleadings reveal a violation of clearly established law. We cannot imagine how the alleged wrongful acts, such as gathering evidence for the tax court trial and communicating details of his investigation to persons involved in Fry's sentencing, infringed clearly established rights under the first amendment. Nor do they suggest that Melaragno acted in a way which he should have known was clearly unlawful. Melaragno is entitled to qualified immunity from suit.

## IV

Although we have held that Otto, Barnes and Pendery are entitled to absolute immunity, and that Melaragno enjoys qualified immunity, this protection only shields them from liability for damages and does not bar an action for declaratory or prospective injunctive relief. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc); *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir.1989). Therefore, the Frys' complaint must be dismissed to the extent it seeks damages, but

it survives insofar as it requests other kinds of relief from these defendants.

REVERSED and REMANDED.