Fred BRYEN, Plaintiff,

v.

John E. BECKER, Jr., et al., Defendants.

Bruce BRYEN, Plaintiff,

v.

John E. BECKER, Jr., Defendant.

Civ. A. No. 91–2635.

United States District Court,
D. New Jersey.

Nov. 22, 1991.

Fred Bryen, pro se.

Bruce Bryen, pro se.

Louis Bizzari, Asst. U.S. Atty., Camden, N.J., David B. Blair, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendants.

## ORDER

RODRIGUEZ, District Judge.

This matter comes before the court on defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and on plaintiffs' motion for partial summary judgment and appeal of the magistrate's order. For the following reasons, defendants' motion to dismiss will be granted, and the defendants' motion and appeal will be dismissed as moot.

## I. INTRODUCTION

Plaintiffs, Fred and Bruce Bryen, are certified public accountants and partial owners of the firm Bryen & Bryen. This action arises out of a series of letters written by the defendants, who are attorneys for the Internal Revenue Service, regarding the tax exempt status of investments made by clients of the plaintiffs.

The plaintiffs allege, and the defendants do not contest, that on July 12, 1990, the defendants wrote a letter to the plaintiffs and certain clients of the plaintiffs indicating, *inter alia*, an offer of settlement for a claim the IRS had against the recipients of the letters. In the letter, the defendants indicated the reasons for the IRS' claim,

and also stated that "the mere opinion of an accountant" is disavowed as authority for the tax position taken. *See* Complaint at ¶¶ 6–7. Subsequent to the publication of the letter, the plaintiffs requested that the defendants withdraw the statement, as they claimed it was a misstatement of the factual record.

On September 25, 1990, the defendants again wrote to the plaintiffs and to the investors in the tax shelters and indicated that they were unwilling to revise their previous letter, and expressly denied making any material misrepresentations. *See* Complaint at Exh. D. Plaintiff then requested a "settlement conference" with the IRS in order to avoid "unnecessary litigation."

On May 28, 1991, defendant Stephen Kesselman, District Council for the IRS, responded to plaintiffs request by restating the IRS' position that the previous letters contained no misrepresentations regarding the evaluation of the plaintiffs tax shelters, and refused to issue any "retraction" of the statements.

Plaintiffs contend that the statements in the letters were made with "evil motive and malice, with intent to injure, disgrace and defame plaintiff[s] and with knowledge of the falsity as to the truth of the statement." *Id.* at ¶ 7. The plaintiffs also complain that, because of these statements, they "suffered great upset, shock, and mental and emotional distress" and that the firm of Bryen & Bryen "suffered loss of income and future income by termination of its services by clients who ... felt that plaintiff ... had given them improper advice." Complaint at ¶ 9. In addition, plaintiffs claim they have "suffered damages" resulting from the May, 1991 letter. This action followed.

In paragraph 5 of the complaint, plaintiffs allege "[t]he action arises under the Fifth Amendment to the Constitution of the United States which states in part: 'No person shall be ... deprived of life, liberty, or property, without due process of law....'" Complaint at ¶ 5. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. *Standard of Review*

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *See Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). If, under any circumstances, the plaintiff would be entitled to relief, then a motion to dismiss should not be granted. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Williams v. Hepting*, 844 F.2d 138, 140 (3d Cir.1988). When a party is proceeding *pro se*, they are held to a less stringent standard than the ordinary litigant, and are entitled to a liberal construction of the courts procedural rules. *See Todaro v. Bowman*, 872 F.2d 43, 44 n. 1 (3d Cir.1989). With the foregoing in mind, I proceed to the merits.

### B. *Constitutional Claims*

Defendants assert in their motion to dismiss that the plaintiffs' complaint should be dismissed because it fails to allege a deprivation of a constitutional right.[1] *See* Memorandum in Support at 3. In support of this position, the defendants rely on *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

In *Siegert*, the Court was confronted with a plaintiff who claimed he was defamed by a federal government supervisor who made malicious remarks in bad faith about his abilities as a clinical psychologist.

---

**1.** The complaint alleges a violation by federal officials of the plaintiffs' fifth amendment right to due process. Therefore, they are attempting to state a direct cause of action against the officials, and if the right they assert exists, they would have a claim. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Because of the alleged defamatory statements, the plaintiff in *Siegert* sought relief under the Due Process Clause of the fifth amendment for violations of his "liberty interests." *See Siegert*, 111 S.Ct. at 1792. The liberty interests alleged were the plaintiff's loss of employment and his inability to find future comparable employment with the government. *Id.* at 1793. In affirming the court of appeals, the Court noted that "injury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Id.* at 1794, *citing Paul v. Davis*, 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).[2] The Court then noted

> The statements contained in the letter would undoubtedly damage the reputation of one in [plaintiffs] position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, . . . it is not recoverable in a *Bivens* action.

*Siegert*, 111 S.Ct. at 1794.

■ The plaintiffs try to avoid the controlling nature of the above language by arguing that they are not claiming damage to their reputation, but are asserting a loss of business and income due to their clients' reliance on the allegedly false and defamatory statements. *See* Brief in Reply at 18. This "property right" in the business is what has been damaged, according to plaintiffs, and it is this violation for which they seek redress.

A prominent person has recently been heard to say, you cannot put a sign on a pig that reads horse and expect the pig to change. Or, as the incomparably more eloquent William Shakespeare has written for the desperate and star-crossed lover Juliet,

'Tis but thy name that is my enemy. Thou art thy self, though not a Montague. O be some other name! What's Montague? It is not hand, not foot, nor arm, nor face, Nor any part belonging to a man. What's in a name? That which we call a rose by any other name would smell as sweet. So Romeo would, were he not Romeo called, Retain that dear perfection which he owes, Without that title. Romeo, doff thy name; And for thy name, which is not part of thee, Take all myself.

Shakespeare, Romeo and Juliet act 2, sc. 2. The dear perfection that plaintiffs seek in order to preserve their claim is absent in this case. Although they structure their claim as a deprivation of a property interest in their business, it is beyond peradventure that the plaintiffs are alleging injury to their reputation and damages stemming from this injury. When such injury occurs, it is not recoverable as a due process claim. *See Siegert*, 111 S.Ct. at 1794.

■ Moreover, even if this court were to find the existence of a nascent property right within the fifth amendment's due process framework, the holding would be no different due to the existence of absolute immunity. Although the Supreme Court has not yet ruled on the applicability of absolute immunity for federal attorneys initiating civil litigation, several circuits have found the need to impose such immunity. *See Barrett v. United States*, 798 F.2d 565 (2d Cir.1986); *Murphy v. Morris*, 849 F.2d 1101, 1104–05 (8th Cir.1988) (allowing absolute immunity for state attorneys general functioning in the adjudicative process); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir.1991) (holding that "the principles outlined in *Butz* should *a fortiori* apply to the government attorney's initiation and handling of civil litigation in a state or federal court."). *Cf. Bass v. Attardi*, 868 F.2d 45, 50 (3d Cir.1989) (holding that planning board officials are absolutely immune from suit due to the integral relationship between board activities and the

---

**2.** The Court in *Paul v. Davis* also held that injury to reputation does not constitute a deprivation of a "property" right recognized by either the fifth or fourteenth amendment. *See Paul*, 424 U.S. at 712, 96 S.Ct. at 1165.

judicial process); *see also Schrob v. Catterson*, 948 F.2d 1402, 1411–13 (3d Cir.1991) (citing *Melaragno* and other cases supporting absolute immunity for prosecutors acting in a civil capacity, and holding that "[f]rom the policy perspective of protecting the judicial process announced in *Imbler* and *Butz*, there should be no distinction between a prosecutor acting as the government's advocate in a criminal or a civil proceeding.").

The Second Circuit, in *Barrett v. United States*, 798 F.2d 565 (2d Cir.1986), found that the "[e]xtension of absolute immunity to … government litigators finds common law and historical support in the broader principle that 'the immunity which is extended to the judges is in like manner extended to the attorneys in the presentation of a client's case to the court or the jury.'" *Barrett*, 798 F.2d at 572 (citation omitted). This conclusion reached by the Second Circuit derives from the Court's prior cases allowing for absolute immunity for government prosecutors and executive officials engaged in adjudicative or quasi-judicial functions. *See Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Butz v. Economou*, 438 U.S. 478, 513–17, 98 S.Ct. 2894, 2914–16, 57 L.Ed.2d 895 (1978).

The need for absolute immunity, as recognized by the Court, arises in order to protect government officials from the fear of harassment and the disruptive burden of vexatious lawsuits. *See Butz*, 438 U.S. at 510–12, 98 S.Ct. at 2912–13. If every government attorney involved in a civil matter were to be subject to suit, and his actions were scrutinized for any possible constitutional error, then the efficacy of these officials would surely be compromised. In the instant case, the zeal with which IRS attorneys pursue delinquent or derelict taxpayers would be curtailed if this court were to allow allegedly aggrieved individuals to maintain a *Bivens* action in federal court. *Cf. id.* at 515, 98 S.Ct. at 2915 (noting that "[t]he discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.").

That this case involves a settlement offer prior to the initiation of a civil case or agency adjudication does not alter the conclusion. Settlement, like a trial itself, is an aspect of our system "'intimately associated with the judicial phase' of [ ] litigation." *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir.1991). Depriving government attorneys of immunity when negotiating a settlement, but then cloaking them with the absolute shield when actually bringing a case to trial would make no sense at all. Moreover, such a construction would encourage government litigators exclusively to bring cases to trial, and would deprive them of the pragmatic and entirely essential tool of offers to settle, with the sole motivating purpose being avoidance of exposure to liability. This incongruous result could serve no purpose but to clog the courts, and will not be adopted. *Cf. e.g., Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir.1991) (holding that a prosecutors negotiation with a defendant is entitled to absolute immunity); *Schloss v. Bouse*, 876 F.2d 287, 291–92 (2nd Cir.1989) (absolute immunity allowed for prosecutors who negotiate releases from civil liability in exchange for agreements not to prosecute).

The court in *Barrett* was prescient enough to recognize one potential pitfall of the absolute immunity defense. The court noted "[a]lthough the immunity may occasionally preclude redress for defamation, it recognizes the free speech needs of litigating adversaries." *Barrett*, 798 F.2d at 573. That this case may present, if proven, such an exception does not in any way militate against the application of the defense. The plaintiffs may possibly maintain an action against the defendants under the Federal Tort Claims Act, or they may pursue administrative channels for agency review of the defendants actions. But the federal court will not entertain a *Bivens* action against these IRS attorneys when they are engaged in their adjudicative role.

### III. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED on this 22nd day of November, 1991, that the defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is hereby GRANTED.

It is further ORDERED that plaintiffs' motion for summary judgment and appeal of the Magistrate's order are DISMISSED AS MOOT.