Alvin Howard CANELL, Plaintiff,

v.

**OREGON DEPARTMENT OF JUSTICE, Jan Peter Londahl, David N. Hicks, Jr., and Jerry Russell (Supervisor of Inmate Accounts), Defendants.**

CV No. 91–657–PA.

United States District Court, D. Oregon.

Jan. 11, 1993.

Alvin Howard Canell, pro se.

Charles S. Crookham, Atty. Gen., Jan Peter Londhal, Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants.

## OPINION

PANNER, District Judge.

Plaintiff Alvin Howard Canell brings this action against defendants Oregon Department of Justice,[1] Assistant Attorneys General Jan Peter Londahl and David N. Hicks Jr., and Inmate Accounts Supervisor Jerry Russell, in both their individual and official capacities, seeking compensatory and punitive damages and injunctive relief. Defendants move for summary judgment. I grant defendants' motion as to all claims except plaintiff's 42 U.S.C. § 1983 claim alleging defendants Londahl and Hicks brought suit against him in retaliation for § 1983 actions Canell had previously filed against the Department of Corrections.

## BACKGROUND

This is one of several cases challenging procedures used by the Oregon Department of Corrections ("Department") for setting off funds received on behalf of an inmate against that inmate's debt to the institution. I described those procedures in *Bouchard v. Oregon Department of Cor-*

---

1. The Oregon Department of Justice is named as a defendant in the caption, but is not mentioned in any of the four claims for relief. An arm of the state cannot be a defendant in an action under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Eleventh Amendment also precludes plaintiff from asserting a common law tort claim against the state in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

*rections,* No. CV 92–148 (D.Or. July 21, 1992). At all relevant times, plaintiff was an inmate in the custody of the Department.

On March 18, 1991, plaintiff was awarded one dollar as damages in an action brought under 42 U.S.C. § 1983. Plaintiff was also awarded $150 as compensation for costs, such as photocopying, incurred in pursuing the litigation. Londahl was defense counsel at that trial. Londahl Aff. ¶ 2.

The state Risk Management Division paid the judgment and bill of costs with separate checks payable to the "Alvin Canell Inmate Trust Account". Risk Management sent the checks to Londahl, who passed them on to defendant Russell. *Id.* ¶ 3. At the time, plaintiff owed the Department over $2,000 for photocopying, postage, and canteen purchases. Russell Aff. ¶¶ 25–33. Londahl instructed Russell to apply the $150 check towards plaintiff's arrearage and credit the one dollar check to plaintiff's trust account. Londahl Aff. ¶ 3. Londahl now concedes those instructions were erroneous. *Id.* Russell credited the one dollar check to plaintiff's inmate trust account, as Londahl had directed. He ignored Londahl's instructions and also credited the $150 check to plaintiff's inmate trust account in accordance with Department regulations. Russell Aff. ¶ 32.

The Department permits an inmate to spend on canteen purchases one-half of all income the inmate receives during the month, up to a maximum of $30. Any balance left in the inmate's account at the end of the month is then applied to offset debts the inmate owes to the Department.[2] If funds in the account exceed the inmate's debt, the remaining positive balance carries over into the next month. Russell Aff. ¶¶ 14–15.

The two checks were credited to plaintiff's inmate trust account on or about the last day of the month. Plaintiff did not make any canteen purchases before the month ended. Accordingly, all funds remaining in the account, including the $151 plaintiff received from the § 1983 litigation, were applied to offset plaintiff's debt to the Department, which totaled $2497.47. Russell Aff. ¶ 33.

Defendants' debt collection activities were not limited to waiting for money to be deposited in plaintiff's inmate trust account. Londahl knew plaintiff had received $5,000[3] in settlement for three cases involving claims that plaintiff had been racially celled at various institutions. Londahl Aff. ¶ 6. Londahl also knew those funds were held in a trust account by plaintiff's attorney, Roy Haber. *Id.* Sometime in the Spring of 1991 (the date is unclear), Londahl called defendant Hicks, an Assistant Attorney General in the Credit and Bankruptcy Division of the Department of Justice, and suggested Hicks "consider suing plaintiff to recover what he owed to the Department of Corrections prior to his [plaintiff's] release from incarceration." *Id.* ¶ 5. After consulting with his superior, Joe McNaught, and with Jef VanValkenburgh, Department of Corrections General Counsel, Hicks filed suit against plaintiff on behalf of the Department. Hicks Aff. ¶¶ 3–4. The suit was eventually dismissed because "inmate Canell's defense of the suit made it cost ineffective." *Id.* ¶ 5.

### STANDARDS

The court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.

---

**2.** This is an over-simplification. Excess funds are actually removed daily and applied towards the debt, in accordance with a formula. The net effect is the same for purposes of this case.

**3.** Plaintiff states the figure as $10,000 in his affidavit. Canell Aff. ¶ 3. The discrepancy is not important here.

**550**

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

██ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of a material factual issue against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

## DISCUSSION

1. *Moot Claims:* Part of this case has been mooted by events that occurred while this case was consolidated with No. 92–148 and *Canell v. Oregon Dept. of Corrections,* No. CV 91–598 (D.Or.). As a result of those cases, defendants have changed their practices and rules, and agreed to furnish notice to any inmate whose account is subject to a setoff. Plaintiff's request for an injunction ordering defendants to discontinue the system of automatic collection from inmate accounts is therefore moot.[4] I previously ruled that defendants were entitled to qualified immunity from damages in connection with the operation of the Department's system for automatic collection from inmate accounts because they did not violate clearly established constitutional rights of which a reasonable person would have known. Opinion of July 21, 1992 in consolidated cases Nos. 92–148 and 91–598. Plaintiff was a party to No. 91–598 and is bound by that ruling. That disposes of plaintiff's entire fourth claim and the alleged constitutional violations in plaintiff's first claim.

██ 2. *Violation of State Regulations:* Plaintiff alleges defendants' actions violated various state regulations. However, only violations of the federal constitution or federal law are cognizable under 42 U.S.C. § 1983, not state law violations.

*Williams v. Treen,* 671 F.2d 892 (5th Cir. 1982), *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). Plaintiff has not pointed to any private right of action for violations of these regulations. Nor is a defendant who is entitled to qualified immunity for alleged constitutional violations stripped of that immunity merely because his conduct violates clearly settled state law. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Plaintiff has failed to state a claim for which this court may grant relief.

██ 3. *Conversion:* Plaintiff's claims for conversion are barred by immunity. Defendants followed state law when they withdrew funds from plaintiff's trust account and applied the funds towards plaintiff's debt to the Department. *See* OAR 291–158–015(11) (1991). Oregon law makes public employees immune from liability for claims arising from acts done or omitted in good faith under apparent authority of a law, even if that law is later found unconstitutional. *See* ORS 30.265(3)(f). There is no evidence defendants acted in bad faith by processing the checks in accordance with Department regulations.

Plaintiff has also not articulated conduct that could constitute conversion. Plaintiff alleges defendants violated state regulations, but never explains how. Plaintiff's assertions that he was not told his money would be taken and did not receive a hearing merely restate his claim that the automatic collection system does not afford due process.

██ 4. *Retaliation:* Plaintiff's second and third claims are brought against only Londahl and Hicks. The claims focus on the lawsuit the Department filed against plaintiff to attach funds plaintiff received in settlement of prior § 1983 litigation against the Department. Plaintiff contends the suit was brought to punish him for the prior § 1983 suits against the Department. *See* Canell Aff. ¶¶ 2–14. Defendants insist the suit was filed in the ordi-

---

4. The injunctive relief requested in this case arguably exceeds the scope of the changes made by defendants as a result of Nos. 92–148 and 91–

598. However, plaintiff was a party in No. 91–598 and acceded to the proposed changes.

nary course of business to obtain satisfaction for debts plaintiff had incurred while incarcerated, and deny any improper motivation. Hicks Aff. ¶ 6; Londahl Aff. ¶ 9. I conclude there is a genuine issue of material fact whether the suit was commenced in retaliation for Canell's prior § 1983 actions against the Department.

5. *Absolute Immunity:* Defendants contend they are absolutely immune from liability for their actions in initiating and prosecuting the action against plaintiff, regardless of their motives. Defendants are partly correct. Londahl and Hicks are immune from state law claims for wrongful use of civil proceedings or abuse of process. Oregon law makes public officials absolutely immune from liability for the exercise of any discretionary function or duty, whether or not the discretion is abused. *See* ORS 30.265(3)(c).

■ Plaintiff's § 1983 claim is another story. On its face the statute admits of no immunities. *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). The Supreme Court has nonetheless assumed Congress did not intend to abolish all common-law immunities. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). The Court has established a two-step procedure for evaluating claims of entitlement to absolute immunity. The first step is to ascertain whether there is an historical or common-law basis for such immunity. *See Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991); *Mitchell v. Forsyth,* 472 U.S. 511, 521, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985); *Tower v. Glover,* 467 U.S. 914, 920–21, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984). If that historical foundation exists, the next step is to consider whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983

actions. *Tower,* 467 U.S. at 920, 104 S.Ct. at 2824.

■ The existence of an historical foundation for the immunity asserted is essential, because the object of the inquiry is to determine Congress' likely intent in enacting this statute. *Burns,* 111 S.Ct. at 1943. The Court does not have a license to establish immunities from § 1983 based on what it judges to be sound public policy. *Id. Accord, Tower,* 467 U.S. at 923, 104 S.Ct. at 2826.

■ Public prosecutors in criminal cases are entitled to absolute immunity for actions "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995. Prosecutorial immunity does not protect defendants in the present case because plaintiff alleges he was injured by a civil claim initiated by defendants, not a criminal prosecution. The courts have occasionally extended absolute immunity to government attorneys who initiate civil proceedings. *See, e.g., Butz v. Economou,* 438 U.S. 478, 515–17, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978). Such extensions have not been predicated upon any historical or common-law tradition of absolute immunity for government attorneys in civil proceedings. Rather, the courts have drawn an analogy between the prosecutor who initiates criminal proceedings and the government attorney who performs the functions of a prosecutor in civil proceedings. *Id. See also Demery v. Kupperman,* 735 F.2d 1139, 1143 (9th Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); *Schrob v. Catterson,* 948 F.2d 1402, 1411 (3d Cir.1991).

■ Government attorneys are not automatically entitled to absolute immunity for initiating civil proceedings without regard to the nature of the case or the role the attorney plays in that proceeding.[5]

---

**5.** In *Fry v. Melaragno,* 939 F.2d 832 (9th Cir. 1991), the court stated that absolute immunity applies in all cases to government attorneys, regardless of whether the attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing. *Id.* at 837. That sweeping generalization was dictum. The underlying litigation in *Fry* was a civil action for failure to pay income taxes, which is analogous to a criminal prosecution. The court was not presented with the same issue that is before me. In any event the court's discussion of the scope of absolute immunity was superfluous, since the decision in

They are protected by absolute immunity only when performing "quasi-prosecutorial"[6] functions in civil cases. In those cases where a government attorney has been found entitled to absolute immunity for initiating a civil action, the underlying civil proceeding has invariably been analogous to a criminal prosecution.[7]

 The underlying litigation here bears little resemblance to a criminal prosecution. Nor can it be characterized as inherently governmental. The Department did not allege plaintiff violated any law or regulation, nor was the Department acting to protect the public health, safety, or welfare. The remedy sought was not a fine, injunction, or license revocation. Rather, the Department was acting as a common creditor attempting to collect a debt. There is nothing unique to distinguish that claim from those filed by businesses every day. The Department was not acting here as the state qua state, but as an ordinary litigant.

Absolute immunity from civil liability for damages is of a "rare and exceptional character." *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985). Unlike other immunities, it is not destroyed if the holder acts in bad faith. A

public official vested with absolute immunity may not be held liable in damages no matter how outrageous his conduct or evil his motives. As such, absolute immunity is at odds with fundamental notions of American justice which hold that all officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. *See Economou*, 438 U.S. at 506, 98 S.Ct. at 2910 (quoting *United States v. Lee*, 106 U.S. (16 Otto.) 196, 220, 27 L.Ed. 171 (1882)).

The Supreme Court has cautioned us that absolute immunity is the exception, not the rule, and is extended sparingly. *See Burns*, 111 S.Ct. at 1939; *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). The Court has declined repeated invitations to extend absolute immunity beyond its present narrow confines.[8]

 The official seeking absolute immunity bears the burden of showing such immunity is justified for the function in question. *Burns*, 111 S.Ct. at 1939. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Id. See also Los Angeles*,

---

*Fry* was controlled by *Flood v. Harrington*, 532 F.2d 1248 (9th Cir.1976).

**6.** *Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir.1989).

**7.** *See, e.g., Economou*, 438 U.S. at 515, 98 S.Ct. at 2915 (proceedings before Commodity Futures Trading Commission to revoke or suspend company's registration for violating agency regulations); *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir.) (civil RICO action charging defendants with conspiracy to interfere with civil rights by blocking access to abortion clinics), *cert. denied*, — U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Shoultes*, 886 F.2d at 118 (violation of zoning ordinance and citation for contempt); *Demery*, 735 F.2d at 1143–44 (proceeding to revoke medical license); *Schrob*, 948 F.2d at 1411–12 (civil forfeiture proceeding); *Hamill v. Wright*, 870 F.2d 1032, 1037 (5th Cir. 1989) (child support contempt proceeding); *Flood*, 532 F.2d at 1251 (civil action for failure to pay income taxes); *Fry*, 939 F.2d at 836–37 (non-payment of income taxes). Absolute immunity has also been extended to social workers who initiate dependency proceedings in cases of suspected child neglect and abuse. *See Meyers*

*v. Contra Costa County Dept. of Social Services*, 812 F.2d 1154, 1157 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987).

**8.** *See, e.g., Burns*, 111 S.Ct. at 1943 (prosecutor not entitled to absolute immunity for advice given to police); *Tower*, 467 U.S. at 921–23, 104 S.Ct. at 2824–25 (public defender not entitled to absolute immunity); *Forrester*, 484 U.S. at 230, 108 S.Ct. at 545 (judge who demoted and discharged probation officer not entitled to absolute immunity); *Mitchell*, 472 U.S. at 521–23, 105 S.Ct. at 2812–13 (Attorney General who authorized a warrantless wiretap on grounds of national security not entitled to absolute immunity); *Cleavinger*, 474 U.S. at 203, 106 S.Ct. at 501 (members of prison disciplinary committee not entitled to absolute immunity); *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (police officer who obtained arrest warrant not entitled to absolute immunity); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (governor, head of State National Guard, and president of state-controlled university not entitled to absolute immunity for their actions in suppressing civil disturbance).

*Police Protective League v. Gates,* 907 F.2d 879, 888 (9th Cir.1990). That presumption is even more true today than twenty years ago, because the current qualified immunity standard provides more protection for public officials than did earlier formulations. *See Burns,* 111 S.Ct. at 1944. Qualified immunity today provides ample protection for all but the plainly incompetent or those who knowingly violate the law. *Id.*

Even assuming government attorneys are ordinarily absolutely immune from suits resulting from their role in initiating civil actions, that defense would still not be available here. There are occasions when an historical foundation for absolute immunity exists, yet § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions. *See Tower,* 467 U.S. at 920, 104 S.Ct. at 2824. Few things would frustrate the purposes of § 1983 more than granting absolute immunity to state officials who retaliate against successful § 1983 litigants. A contrary holding would violate long-standing constitutional principles dating back to *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (states may not interfere with or defeat the operation of federal laws). *See also Hankins v. Finnel,* 964 F.2d 853, 861 (8th Cir.) (Supremacy Clause prohibits state officials from improperly discouraging inmates from filing § 1983 claims), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

 6. *Qualified Immunity:* Defendants may still escape liability for damages if they satisfy the test for qualified immunity. Public officials may not be held personally liable for violating a person's constitutional rights unless the right violated was sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The very conduct in question need not have been previously held unlawful, but the unlawfulness must be apparent in the light of pre-existing law. *Id.* Such is the case here. As the Eighth Circuit observed:

It would seem an elementary proposition that actions taken in retaliation for an individual's assertion of a constitutional right are impermissible.... Indeed, we believe that it is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.... [This principle] is so deeply embedded in the legal and social fabric of our society that no high-level government official could fail to know of it.

*Freeman v. Blair,* 793 F.2d 166, 178–79 (8th Cir.1986) (internal citations and quotation marks omitted), *vacated on other grounds,* 483 U.S. 1014, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987). *See also Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir.1990); *United States v. Wilson,* 639 F.2d 500, 504 (9th Cir.1981); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (actions taken in retaliation for filing lawsuits and administrative grievances violate an inmate's right of access to courts and first amendment rights). Accordingly, defendants Londahl and Hicks are not entitled to qualified immunity on this claim.

## CONCLUSION

Defendants' motion (31) for summary judgment is granted except as to plaintiff's § 1983 claim alleging defendants Londahl and Hicks brought suit against him in retaliation for § 1983 actions Canell had previously filed against the Department of Corrections.