Timothy Arthur JURAN, Plaintiff,

v.

**INDEPENDENCE OR CENTRAL SCHOOL DISTRICT 13J, et al., Defendants.**

Civ. No. 94–625–JO.

United States District Court, D. Oregon.

July 19, 1995.

John S. Ransom, Ransom Blackman & Weil, Portland, OR, for plaintiff.

Thomas S. Moore, Portland, OR, K. Scott McArthur, Monmouth, OR, Gerald L. Warren, City/County Insurance Services, Salem, OR, Kathleen M. Poole, Independence, OR, for defendants.

ROBERT E. JONES, District Judge:

Plaintiff brings this civil rights action against Defendants under 42 U.S.C. § 1983 for violations of his rights under the United States Constitution.[1] Plaintiff also asserts claims for violations of his rights under the Oregon Constitution. This case is before the Court on Plaintiff's (# 38) and Defendants' (# 35, # 42) Cross–Motions for Summary Judgment. Additionally, Defendants have also filed a Motion for Claim Preclusion (# 54). This lawsuit is without merit and I dismiss it by granting Defendants' motions.

## FACTUAL BACKGROUND

Plaintiff was a student at Central High School in Independence, Oregon at the time of the incident upon which this action is based (May 27, 1994). Plaintiff and 72 other students departed for a sanctioned senior field trip around 5:00 a.m. About fifteen miles out of town, one of the students became ill and admitted he had been drinking. The school's vice principal also noted that another student appeared to be passed out.

Thereafter, one of the students on the trip reported to the vice principal that several students including plaintiff had been at a party the prior evening at which alcohol was consumed. The principal addressed the students and asked those who had been drinking to identify themselves. When none did, he ordered the bus to return to the school. They arrived at about 6:15 a.m. and were met

---

1. Plaintiff was a high school student in the Central School District, and "Defendants" are the Central School District, the principal of Central High School, the City of Independence, and several police officers.

by the police. The police suggested that the students be subjected to a breathalyzer to determine which ones had been drinking alcohol. The buses were driven to the police station and all of the students were tested. The school authorities intended to ferret out the offenders and proceed with the field trip, but this was thwarted because of the time consumed in testing.

Plaintiff was tested at 6:58 a.m., and his blood-alcohol level was .033. As a result, the police issued a citation and the school suspended Plaintiff for three days. The suspension would have prevented plaintiff from participating in an awards ceremony and in graduation exercises, but the school board modified the punishment so that he could participate in graduation exercises. On June 7, 1994, Plaintiff initiated the present lawsuit, and alleged the following constitutional violations in support of his claim under 42 U.S.C. § 1983:

(1) unlawful search and seizure under the Fourth Amendment,

(2) deprivation of life, liberty, and property without due process of law in violation of the Fifth Amendment, and

(3) violation of his right to equal protection under the Fourteenth Amendment.

Moreover, Plaintiff also asserts similar claims under the Oregon Constitution:

(1) unlawful search and seizure under Article I, Section 9,

(2) violation of his right to due process under Article I, Section 10, and,

(3) violation of his right against self-incrimination under Article I, Section 12.

In response, Defendants move for summary judgment on all of Plaintiff's claims.

## STANDARD

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91

L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ The substantive law governing a claim determines whether a fact is material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Serv.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims; therefore, I examine each claim in turn.

## I. Oregon Constitutional Claims

■ Plaintiff's direct claims under Sections 9, 10, and 12 of Article I of the Oregon Constitution are fatally flawed. "Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations." *Hunter v. City of Eugene*, 309 Or. 298, 303, 787 P.2d 881 (1990). Rather, the appropriate remedy for constitutional violations by public bodies, officers, employees, and agents is the Oregon Tort Claims Act, ORS 30.260–30.300. *See, e.g., Nelson v. Lane County*, 304 Or. 97, 107, 743 P.2d 692 (1987) ("an unauthorized intentional intrusion upon one's person, property, or effects is a trespass. The tort traditionally has encompassed a damage action against police officers for exceeding their authority to search and seize.")

Specifically, § 30.265 applies to civil actions against public bodies and its employees:

(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is sub-

ject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * * * The remedy provided by ORS 30.260 to 30.300 is *exclusive of any other action* or suit against any such officer, employee or agent of a public body whose act or omission within the scope of their employment or duties gives rise to the action or suit. *No other form of civil action or suit shall be permitted.* (Emphasis added). Plaintiff failed to plead his state constitutional claims under the Oregon Torts Claim Act.[2] Furthermore, Plaintiff concedes that no damages are available for the constitutional claims except as provided by the Act. Consequently, his state constitutional claims are dismissed. I now turn to Plaintiff's remaining claims under the United States Constitution.

## II. Fourth Amendment: Search and Seizure

Defendants submit the municipal court decision from *City of Independence v. Timothy Juran,* No. 94–289, which ruled on Plaintiff's motion to suppress his breathalyzer reading on grounds that it constituted an unreasonable search and seizure under Article I, Section 9, and the Fourth Amendment. The municipal court denied Plaintiff's motion by holding that probable cause and exigent circumstances (*i.e.* dissipation rate of blood alcohol) supported the breathalyzer search under Article I, Section 9.

■ However, that municipal court decision cannot bind this Court on a federal constitutional issue. Thus, I examine the validity of the search under the Fourth Amendment. The United States Supreme Court has held that breath and urine tests implicate the protections of the Fourth Amendment.[3] *Skinner v. Railway Labor Executives' Assoc.,* 489 U.S. 602, 614–16, 109 S.Ct. 1402, 1411–13, 103 L.Ed.2d 639 (1989).

Furthermore, the Fourth Amendment prohibits unreasonable searches and seizures by public school officials. *New Jersey v. T.L.O.,* 469 U.S. 325, 333–34, 105 S.Ct. 733, 738–39, 83 L.Ed.2d 720 (1985).

A search is reasonable if three requirements are met:

(1) there is probable cause to conduct the search;

(2) there is a warrant, or circumstances justifying a warrantless search; and,

(3) the procedures used to search must be reasonable.

*Schmerber v. California,* 384 U.S. 757, 769–771, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966); *United States v. Chapel,* 55 F.3d 1416, 1419 (9th Cir.1995). I address each requirement below.

### A. Probable Cause

■ Probable cause exists where "the facts and circumstances within the [officials'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (internal quotation omitted). Moreover, in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court adopted a "totality of the circumstances" approach to determining whether an informant's tip establishes probable cause. *Id.* at 233, 103 S.Ct. at 2329.

Based upon the following facts, I find that the school officials and police officers in the present action had probable cause to detain Plaintiff and subject him to a breathalyzer search:

(1) shortly after the departure, one of the buses had to stop because a student became ill;

---

**2.** In his Complaint, Plaintiff cites 42 U.S.C. § 1983; however, it is well-settled that "only violations of the federal constitution or federal law are cognizable under 42 U.S.C. § 1983, not state law violations." *Canell v. Oregon Dept. of Justice,* 811 F.Supp. 546, 550 (D.Or.1993); *see also Leer v. Murphy,* 844 F.2d 628, 632 (9th Cir.1988).

**3.** The Fourth Amendment provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

(2) according to the vice principal, the student smelled like alcohol and admitted that he had been drinking alcohol;

(3) thereafter, a former class president informed the vice principal that there had been a party the prior evening at which alcohol had been consumed;

(4) this informant was present at the party, and confirmed that Plaintiff had been drinking at the party with other students including the student who became ill shortly after the buses departed;

(5) the vice principal stated that the informant "was the most reliable student that [he] had contact with while [he] was administrator at Central High School."

(6) the vice principal also learned that the party occurred outdoors and that many people came directly from the party to school;

(7) the vice principal observed that Plaintiff's jeans and boots were muddy;

(8) prior to the breathalyzer, the vice principal detected the odor of alcohol when he was in Plaintiff's presence, as well as when he approached others who were allegedly drinking at the party;

(9) the vice principal noticed that Plaintiff's eyes were bloodshot, and he was lethargic; and,

(10) prior to breathalyzer, school officials informed police that several students, including Plaintiff, had been drinking alcohol.

In light of the totality of the circumstances, and the facts known to the school officials and the police officers prior to administering the breathalyzer, I conclude that the search was supported by probable cause.

## B. Circumstances Justifying a Warrantless Search

■ "Search warrants are ordinarily required * * * where intrusions into the human body are concerned." *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835. A warrant assures the citizen that an objective decision by a detached and neutral magistrate supports the determination that the intrusion is authorized by law, and limited in its objectives and scope. *Skinner*, 489 U.S. at 622, 109 S.Ct. at 1416. However, where the burden of obtaining the warrant is likely to frustrate the governmental purpose behind the search, "the government's interest in dispensing with the warrant requirement is at its strongest * * *." *Id.* at 623, 109 S.Ct. at 1416.

■ In *Skinner* and *Schmerber*, the Supreme Court recognized that the delay in obtaining a search warrant to test a suspect's blood alcohol content justified a warrantless search because the dissipation rate of alcohol in the blood resulted in destruction of valuable evidence. *Skinner* at 623–24, 109 S.Ct. at 1416–17; *Schmerber* at 770–71, 86 S.Ct. at 1835–36. Identical concerns in the present case also support the warrantless search of Plaintiff's blood alcohol content because the delay in receiving a warrant would have resulted in the destruction of evidence.

## C. Reasonableness of Procedures

■ In both *Skinner* and *Schmerber*, the Supreme Court found that blood tests conducted by a physician in a hospital setting were not unreasonably invasive because they involved "virtually no risk, trauma, or pain." *Skinner* at 625, 109 S.Ct. at 1417 (quoting *Schmerber* at 771, 86 S.Ct. at 1836). Moreover, *Skinner* also concluded that breathalyzer tests are less intrusive than blood tests because "they do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment." *Skinner* at 625–26, 109 S.Ct. at 1417–18. Accordingly, I find that the breathalyzer test administered to Plaintiff was a reasonable procedure for determining his blood alcohol content.

Because the search of Plaintiff's blood alcohol was supported by (1) probable cause, (2) exigent circumstances, and (3) performed using reasonable procedures, Defendants did not violate Plaintiff's rights under the Fourth Amendment. Therefore, Plaintiff's § 1983

claim for violations of his Fourth Amendment rights is dismissed.[4]

### III. Fourteenth Amendment

#### A. Suspension and Due Process

■ Construing Plaintiff's Complaint liberally, he alleges that his right to due process under the Fifth Amendment was violated because the high school suspended him, and prevented him from participating in graduation ceremonies and the senior awards night. However, the school board permitted Plaintiff to participate in the graduation ceremonies. Therefore, his rights were allegedly violated only for the suspension and inability to participate in the awards night.

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a student's right to a public education is a property right protected by the due process clause. *Id.* at 574, 95 S.Ct. at 736. Furthermore, the Court ruled that the plaintiff's ten-day suspension from high school without a hearing violated his due process rights. *Id.* at 584, 95 S.Ct. at 741. However, the Court circumscribed the right:

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.* at 582, 95 S.Ct. at 740.

In the present lawsuit, the high school provided the exact procedure as stated by the Supreme Court: prior to Plaintiff's suspension, he was counseled by a school official who explained to him that he would be suspended for violating school rules and the law. According to *Goss*, this procedure was sufficient to protect Plaintiff's right to due process, and Plaintiff so conceded during his oral argument. Therefore, Plaintiff's claim for violations of his due process rights is dismissed.

### IV. Fifth Amendment: Self-Incrimination

■ Though Plaintiff fails to specifically allege a claim for self-incrimination in his Complaint, he refers generally to violations of the Fifth Amendment. Therefore, I address the validity of a claim for damages caused by the police officers' alleged failure to provide a *Miranda* warning prior to interrogating Plaintiff.

*Miranda* rights are required for "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). However, Plaintiff's remedy for a violation of his Fifth Amendment right against self-incrimination is the exclusion from evidence of their self-incriminating statements. *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir.1989) ("the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a § 1983 action."), *cert. den.*, 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1990); *Brock v. Logan County Sheriff's Dept. of Arkansas*, 3 F.3d 1215, 1217 (8th Cir.1993) (quoting *Warren* with approval).

For this type of Fifth Amendment violation to rise to the level of a § 1983 violation, the alleged conduct of the government agent must "shock[ ] the conscience." *Cooper v. Dupnik*, 963 F.2d 1220, 1248–49 (9th Cir. 1992) (section 1983 action for violation of Fifth Amendment valid where plaintiff's repeated requests for counsel were ignored and where he was badgered continuously for four hours prior to his confession), *cert. den.*, —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332

---

4. Because I find that probable cause and exigent circumstances justified the breathalyzer search, I need not address the intricacies of the potentially lower standard of reasonable suspicion when school officials, with the aid of police officers, search students. *See, e.g., Cason v. Cook*, 810 F.2d 188 (8th Cir.1987) (held that standard of reasonable suspicion rather than probable cause applied to a search by a school official who was accompanied by a police officer that performed a pat down after the official discovered physical evidence on the suspect).

(1993). There is no such outrageous conduct in the case at hand. Rather, the facts show that Plaintiff was escorted with other students into the Independence City police station by school officials and given breathalyzer tests. Those students who tested positive for alcohol were separated by school officials and questioned. The students' parents were called, and they were then released. For Plaintiff, the entire procedure lasted approximately 45 minutes. These facts do not support a § 1983 claim for Defendants' failure to read *Miranda* warnings to Plaintiff. Accordingly, Plaintiff's claim for self-incrimination is dismissed.

## CONCLUSION

IT IS ORDERED that Defendants' Motion (# 54) for Claim Preclusion is DENIED. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (# 38) is DENIED, and Defendants' Motions for Summary Judgment (# 35, # 42) are GRANTED. Accordingly, Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.