**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD T. STAPLEY, JR.; KATHLEEN STAPLEY,

*Plaintiffs-Appellees*,

v.

PETER R. PESTALOZZI; LISA AUBUCHON,

*Defendants*,

and

ANDREW THOMAS; ANN THOMAS,
*Defendants-Appellants*.

No. 12-16145

D.C. No.
2:10-cv-02756-NVW

---

DONALD T. STAPLEY, JR.; KATHLEEN STAPLEY,

*Plaintiffs-Appellees*,

v.

ANDREW THOMAS; ANN THOMAS,
*Defendants*,

and

No. 12-16146

D.C. No.
2:10-cv-02756-NVW

OPINION

LISA AUBUCHON; PETER R.
PESTALOZZI,
                    *Defendants-Appellants*.

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
May 9, 2013—San Francisco, California

Filed August 16, 2013

Before: William A. Fletcher, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY*

### Civil Rights

The panel affirmed the district court's denial of former
Maricopa County prosecutors Andrew Thomas's and Lisa
Aubuchon's (and their spouses') motions to dismiss based on
absolute immunity.

---

* This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Former Maricopa County Board of Supervisors member Donald T. Stapley, Jr. and his spouse ("plaintiffs") brought this lawsuit under 42 U.S.C. § 1983 and state law alleging that Thomas and Aubuchon initiated a frivolous federal civil racketeering ("RICO") suit against Stapley to harass him as part of an ongoing political war in Maricopa County involving the Board of Supervisors, Sheriff Joe Arpaio, and others. Thomas and Aubuchon were later disbarred, in part for initiating the RICO suit in question. The panel held that, under the circumstances, Thomas and Aubuchon were not entitled to absolute immunity because their actions were not sufficiently analogous to those of a prosecutor.

## COUNSEL

Sarah Lynn Barnes (argued), Richard Edward Chambliss, and Donald Wilson, Jr., Broening Oberg Woods & Wilson P.C., Phoenix, Arizona; Douglas V. Drury (argued) and James P. Mueller, Mueller & Drury, P.C., Scottsdale, Arizona, for Defendants-Appellants.

Larry Jay Wulkan (argued); Michael Charles Manning; Stefan M. Palys, Stinson Morrison Hecker LLP, Phoenix, Arizona; Merwin D. Grant, Kenneth Brent Vaughn, Grant & Vaughn P.C., Phoenix, Arizona, for Plaintiffs-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Former prosecutors Andrew Thomas and Lisa Aubuchon, and their spouses, ("Defendants") appeal the district court's partial denial of their motions to dismiss. Former Maricopa County Board of Supervisors member Donald T. Stapley, Jr. and his spouse ("Plaintiffs") allege that Defendants initiated a frivolous federal civil racketeering ("RICO") suit against Stapley to harass him. The suit was part of an ongoing "political war" in Maricopa County between the Board of Supervisors, Sheriff Joe Arpaio, and others. Thomas and Aubuchon were later disbarred, in part for initiating the RICO suit in question.

Thomas and Aubuchon argued that they are entitled to absolute prosecutorial immunity from any claims arising out of their filing of the civil RICO action. The district court disagreed, denying Defendants' motion to dismiss as to the claims arising from the RICO suit. We affirm.

### I. Factual Background

This case is before us on a Rule 12(b)(6) motion to dismiss. We describe the facts using the allegations from Stapley's Second Amended Complaint.

### A. General Background

Stapley is a member of the Maricopa County Board of Supervisors ("the Board"). Thomas was the County Attorney, heading the Maricopa County Attorney's Office ("MCAO"). Aubuchon was a Deputy County Attorney.

Stapley and other supervisors clashed on a number of occasions with Thomas, as well as County Sheriff Joe Arpaio, former County Chief Deputy Sheriff David Hendershott, and others. Thomas and Sheriff Arpaio resented Stapley's investigations into the expenditures of the MCAO and the Maricopa County Sheriff's Office ("MCSO"). On one occasion, Stapley criticized Thomas' excessive use of expensive outside counsel, including Thomas' former law firm. Thomas responded by suing the Board to establish himself as the sole decision maker for hiring outside counsel. On another occasion, Stapley criticized the MCSO for using County money to finance trips to Central America. Thomas also believed that Stapley was interfering with Thomas' ongoing anti-methamphetamine program. Eventually the Board cut $6 million from the MCAO budget, and "[t]he conflicts escalated into what has been called a 'political war.'"

Defendants initiated a campaign of harassment against Stapley and his supporters. As part of their campaign, Defendants launched baseless investigations into Stapley for alleged wrongdoing. One investigation related to a construction project for a new tower of the Maricopa County Superior Court (the "Court Tower Project"). Defendants reported possible wrongdoing by Stapley and others to the U.S. Post Office and the Department of Justice. The U.S. Attorney's Office determined that there was no evidence of wrongdoing, noting that "in several instances, the evidence was so lacking as to make the theory of liability nearly incomprehensible." Sheriff Arpaio and Thomas later formed what they called the Maricopa County Anti-Corruption Enforcement unit ("MACE"), which they used to target their political enemies with criminal investigations. Thomas assigned Aubuchon to be MACE's primary attorney.

Defendants filed two baseless criminal complaints against Stapley. While seeking the first indictment, Aubuchon omitted or misrepresented facts and law to the grand jury. Thomas issued a press release announcing the indictment, and Thomas and Sheriff Arpaio also "sent a letter to the Secret Service notifying it that [Stapley] was under indictment and investigation."

The State Bar investigated Thomas for ethical violations in prosecuting Stapley. Judge Rebecca Albrecht, acting for the State Bar, informed Thomas, "It is clear to me that under the facts as they were presented in the pleadings there was a clear issue of conflict of interest, which if borne out would have led to a conclusion that you had violated Ethical Rules 1.7, 1.10 and 8.4(d)." Judge Albrecht stated that she would close the investigation once Thomas confirmed that he was no longer involved in the prosecution.

To avoid disciplinary proceedings, Thomas advised the State Bar that he had transferred prosecution of the case and ongoing investigations of Stapley to Yavapai County Attorney, Sheila Polk. He announced that MCAO was to have no further involvement in the case. However, after the announcement, Aubuchon "continued to work on the investigations," reporting to Sheriff Arpaio and Thomas. All 118 counts of the first indictment were eventually dismissed or voluntarily withdrawn by Polk. Sheriff Arpaio and Hendershott complained to Polk that the dismissal would embarrass them in the media.

Thomas and Aubuchon next filed a civil RICO suit against Stapley and others, as discussed below. While this civil suit was pending, Defendants initiated a second criminal case against Stapley. Pima County Superior Court Judge

John S. Leonardo dismissed a similar criminal case against a different Board member, Mary Rose Wilcox, finding that Thomas had numerous conflicts of interest related to his "efforts to retaliate against members of the [Board]" and to "gain political advantage by prosecuting those who oppose him politically." Special counsel for the State Bar also informed Thomas and Aubuchon that filing criminal charges while pursuing the civil RICO suit against Stapley created ethical conflicts.

After Judge Leonardo dismissed the case against Wilcox, Thomas, and Sheriff Arpaio announced that Thomas would send the new criminal case against Stapley to Gila County Attorney, Daisy Flores, for review. Flores refused to prosecute any counts of the indictment due to the lack of evidence. She noted that because of "the sordid tapestry of how this case arose, . . . any subsequent prosecution of [Stapley] would be our ratification of government misconduct on the part of the MCAO and the MCSO."

## B. Civil RICO Suit

Thomas and Aubuchon filed a federal civil racketeering suit against Stapley and others in late 2009. A number of people had advised them not to file the suit. Aubuchon knew that an outside law firm had evaluated the viability of a civil RICO action in October 2009, and had concluded that "there was insufficient evidence for such an action." A RICO expert in the Maricopa County Attorney's Office, Peter Spaw, informed Thomas and Aubuchon that there was no evidence to justify a civil RICO action. Spaw refused to assist in drafting the complaint. MCAO supervisors Barnett Lotstein and Phil MacDonnell also told Thomas that "the RICO Suit was not appropriate or viable based on the facts and

circumstances." Despite these warnings, Thomas and Aubuchon actively participated in drafting the complaint before filing it on December 1, 2009. Lotstein and MacDonnell — who had "believed that Thomas had heeded their advice not to pursue" the RICO suit — learned about the filing only after Sheriff Arpaio and Thomas announced it to the media.

Sheriff Arpaio and Thomas were the plaintiffs in the civil RICO suit. The complaint listed Thomas and Aubuchon as plaintiffs' attorneys. Aubuchon signed the complaint. The complaint named fourteen individuals as defendants, as well as the Maricopa County Board of Supervisors and a law firm. The individual defendants included Stapley, other County Board members, state court judges, and county employees.

The general theory of the RICO complaint was that Stapley and the other RICO defendants had conspired to implement the Court Tower Project and to thwart Thomas and Sheriff Arpaio's legitimate criminal investigations into the activities of Stapley and others. The complaint alleged that the RICO defendants cut funding to the MCAO, intimidated and retaliated against prosecutors, improperly evaded surveillance devices, filed frivolous State Bar complaints against Thomas and his deputies, and committed various criminal acts. The complaint further alleged that the judicial defendants had been biased against Thomas and had issued unfair rulings against him.

The complaint generally alleged two types of injuries. First, it alleged that defendants cut funding for the MCAO, thus depriving Sheriff Arpaio of legal services and preventing the MCAO from fulfilling its duties. Second, the complaint asserted injuries to Thomas and other MCAO attorneys

related to the RICO defendants' alleged efforts to deprive them of their law licenses by reporting them to the bar association. The complaint sought treble damages.

Thomas and Sheriff Arpaio voluntarily dismissed the RICO suit on March 11, 2010, less than four months after filing. The court had taken no action on the suit. The dismissal notice stated that "having referred this matter to the Public Integrity Section ("PIN") of the United States Department of Justice and having received their assurances that PIN will review the matter, Plaintiffs [Sheriff Arpaio] and [Thomas] . . . hereby voluntarily dismiss" the case. Thomas and Sheriff Arpaio held a press conference where Thomas announced "victory" in the RICO suit. With the approval of Sheriff Arpaio and Thomas, Sheriff Arpaio's attorney, Robert Driscoll, stated at the conference that the Department of Justice ("DOJ") had agreed to investigate the RICO Lawsuit defendants. DOJ had in fact made no such agreement, but had informed Driscoll only that Thomas and Sheriff Arpaio could submit a tip like any other citizen. DOJ issued a statement two days later, rejecting the press conference's characterization of events and stating that it was "dismayed to learn" that information received from DOJ had been "used as a platform for a press conference."

## C. Disbarment of Thomas and Aubuchon

A disciplinary panel of the Arizona State Bar investigated Thomas and Aubuchon related to the above incidents. The panel found "overwhelming" evidence that Defendants had abused their power and "spen[t] the public's money for their *cause célèbre*." Noting that the "harm" done by Thomas and Aubuchon "to the public, individuals, and the profession was

stunning on every front," the panel ordered them disbarred. Aubuchon has appealed the ruling.

With respect to the RICO complaint, the bar panel noted that Thomas and Aubuchon had filed suit despite numerous warnings from other MCAO attorneys and from outside counsel that the suit "would be a misuse of the law" and that "sanctions for a frivolous lawsuit would likely be imposed." The panel determined that the complaint, in addition to being "unintelligible or nonsensical" in places, did not state facts sufficient to support any of its legal claims. The panel also found that Thomas and Aubuchon made no effort to gather evidence to support the suit, that they lacked authority under Arizona law to file the suit, and that the suit caused severe emotional damages to the RICO defendants.

## II. Proceedings Below

Stapley, his spouse, and several other Board members, judges, and County employees sued seeking monetary damages. The suits named multiple defendants, including Thomas, Aubuchon, Sheriff Arpaio, and Maricopa County itself. Most of the parties have settled. The only remaining plaintiffs in this appeal are Stapley and his spouse. Thomas, Aubuchon, and their spouses are the only defendants.

Stapley has alleged twelve causes of action under 42 U.S.C. § 1983 and state law. His claims include wrongful institution of civil proceedings, malicious prosecution, false imprisonment and arrest, intentional infliction of emotional distress, unlawful search, equal protection and other constitutional violations, and conspiracy to violate § 1983. Stapley alleged that Defendants' filing of the RICO suit caused some of his injuries.

Defendants moved to dismiss on multiple grounds. They contend, inter alia, that they are entitled to absolute immunity from claims arising out of their initiation of the RICO suit. The district court partially granted and partially denied Defendants' motions. *See Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1078–79 (D. Ariz. 2012). Relevant here, the district court rejected Defendants' assertion of absolute immunity from claims arising out of the RICO suit. *Id.* at 1054–56. The court noted that absolute immunity for government attorneys is generally limited to those attorneys' actions that are "'intimately associated with the judicial phase of the criminal process.'" *Id.* at 1055 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The court held that the civil RICO suit was not sufficiently analogous to criminal proceedings to qualify for absolute immunity. The court emphasized that the civil RICO statute does not give any special authority to county officials to bring RICO suits. *Id.* at 1056. Rather, Defendants had filed suit under a provision authorizing any member of the public to sue. Since Defendants were on the same footing as private lawyers in bringing the suit, the court concluded, they were not entitled to absolute immunity. *Id.*

Defendants timely appealed the denial of absolute immunity from claims arising out of the civil RICO suit.

### III. Jurisdiction

We have jurisdiction under 28 U.S.C. § 1291. A district court order denying absolute immunity on a motion to dismiss constitutes an immediately appealable final decision. *See Will v. Hallock*, 546 U.S. 345, 350 (2006).

Stapley contends that we lack jurisdiction because the immunity question turns on disputed facts. We disagree. As discussed below, we consider the facts as alleged in the complaint. We then apply the law to those alleged facts to determine whether Defendants are entitled to absolute immunity. *Cf. Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004) (performing de novo review of mixed questions of law and fact).

## IV.  Standard of Review

We review de novo the denial of absolute immunity on a Rule 12(b)(6) motion to dismiss. *See Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008); *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks omitted). We are "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## V.  Discussion

The sole issue before us is whether Defendants are absolutely immune from suit under 42 U.S.C. § 1983 for their actions in filing the civil RICO complaint. The parties agree that state-law prosecutorial immunity from the state-law claims is the same as federal-law immunity from claims

under § 1983.  We hold that Defendants are not entitled to absolute immunity.

## A.  Supreme Court Precedent

In *Imbler*, the Court held that prosecutors have absolute immunity under § 1983 for a decision to initiate a criminal prosecution.  424 U.S. at 430–31.  The Court noted the common law rationales for granting immunity, including insulating prosecutors from harassment and allowing them to make independent decisions without fear of litigation.  *Id.* at 422–24.  The Court determined that the same concerns warranted absolute immunity under § 1983.  *Id.* at 424.  The Court acknowledged that absolute immunity comes at the price of "leav[ing] the genuinely wronged defendant without civil redress."  *Id.* at 427.  It nonetheless concluded that absolute immunity was the best "balance between the evils" in the criminal context.  *Id.* at 428 (internal quotation marks omitted).

The Court in *Imbler* did not define the precise scope of prosecutorial immunity.  It held only that absolute immunity applied to a prosecutor's "activities . . . intimately associated with the judicial phase of the criminal process."  *Id.* at 430. The Court has since confirmed that the functional nature of the activities being performed, not the status of the person performing them, is the key to whether absolute immunity attaches.  *See Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that"the nature of the function performed, not the identity of the actor who performed it," informs the absolute immunity analysis).

In *Butz v. Economou*, 438 U.S. 478, 511–14 (1978), the Court extended *Imbler* beyond criminal prosecutions to

administrative enforcement proceedings.  In *Butz*, the Court
held that "agency officials performing certain functions
analogous to those of a prosecutor should be able to claim
absolute immunity with respect to such acts."  *Id.* at 515.
Noting again that functional comparisons are key and that it
is the "characteristics of the judicial process rather than its
location" that matters, *id.* at 512, the Court concluded that
agency enforcement actions are sufficiently analogous to
criminal prosecutions that agency officials who initiate
enforcement actions are protected by absolute immunity.  *Id.*
at 516–17.  The Court emphasized that qualified immunity is
the norm for government officials except in "exceptional
situations where it is demonstrated that absolute immunity is
essential for the conduct of the public business."  *Id.* at 507.

## B.  Ninth Circuit Precedent

In two early cases, we granted absolute immunity to IRS
attorneys who initiated civil tax-collection lawsuits.  *See Fry
v. Melaragno*, 939 F.2d 832, 838 (9th Cir. 1991); *Flood v.
Harrington*, 532 F.2d 1248, 1252 (9th Cir. 1976).  We used
broad language in *Flood*, stating that we did not "see any
significant reason to distinguish actions involving civil
claims" from criminal prosecutions. *Flood*, 532 F.2d at 1251.
Similarly, in *Fry* we stated broadly that government attorneys
are entitled to absolute immunity in all litigation contexts:

> Whether the government attorney is
> representing the plaintiff or the defendant,
> or is conducting a civil trial, criminal
> prosecution or an agency hearing,
> absolute immunity is "necessary to assure
> that . . . advocates . . . can perform their
> respective functions without harassment or

> intimidation." *Butz*, 438 U.S. at 512. Given the similarity of functions of government attorneys in civil, criminal and agency proceedings, and the numerous checks on abuses of authority inherent in the judicial process, we reiterate our statement in *Flood* that "[t]he reasons supporting the doctrine of absolute immunity apply with equal force regardless of the nature of the underlying action." 532 F.2d at 1251 (citation omitted).

*Fry*, 939 F.2d at 837 (omissions and alteration in original) (parallel citation omitted). Defendants contend, based on this language, that prosecutors are entitled to absolute immunity in any civil litigation, and that this immunity extends to claims arising from the civil RICO action at issue here.

We do not believe that *Flood* and *Fry* require absolute immunity in all civil suits. *Flood* and *Fry* both involved suits brought against government attorneys who had brought civil tax enforcement proceedings. The scope of immunity for other types of civil suits was not at issue. The broad reading of *Fry* and *Flood* for which Defendants advocate would go well beyond what is required under Supreme Court precedent. The Court has emphasized that qualified immunity is the norm for government officials, and that absolute immunity exists only in "exceptional situations" where it is "essential for the conduct of the public business." *Butz*, 438 U.S. at 507; *see also Burns v. Reed*, 500 U.S. 478, 487 (1991) ("We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." (internal quotation marks and citation omitted)). The Court has never stated that government attorneys receive absolute immunity for all

litigation-related conduct, even in criminal cases. Rather, the Court has repeatedly stated that only certain actions taken by prosecutors receive absolute immunity, and that a functional comparison of the activities performed is critical. *See Imbler*, 424 U.S. at 430 (finding absolute immunity for "activities . . . intimately associated with the judicial phase of the criminal process"); *Butz*, 438 U.S. at 515 (finding absolute immunity for "functions analogous to those of a prosecutor").

We recently rejected a prosecutor's claim of absolute immunity in *Lacey v. Maricopa County*, 693 F.3d 896, 912–14 (9th Cir. 2012) (en banc). The county attorney in *Lacey* was another ally of Sheriff Arpaio in his wars against political adversaries. *See id.* at 909. The county attorney had issued subpoenas against newspaper publishers who had offended Sheriff Arpaio by publishing articles that criticized him. *Id.* at 913–14. The subpoenas were invalid because they had been issued without approval from or notice to the grand jury. *Id.* at 913. The attorney thereby violated Arizona statutes requiring either grand jury approval or notification. We held that the attorney was not entitled to absolute immunity from § 1983 claims brought by the improperly subpoenaed publishers. *Id.* We emphasized that the county attorney had avoided judicial scrutiny by acting unilaterally: "Where the prosecutor has side-stepped the judicial process, he has forfeited the protections the law offers to those who work within the process." *Id.* at 914.

## C. Absolute Immunity for Thomas and Aubuchon

The question here is whether, in the circumstances of this case, Thomas and Aubuchon are entitled to absolute immunity from claims arising out of their initiation of the civil RICO suit. Defendants have the burden of showing that

they are entitled to absolute immunity. *See Burns*, 500 U.S. at 486. We conclude that Defendants have not carried their burden.

Because the RICO suit was civil, *see* 18 U.S.C. § 1961, *et seq.*, it was not "intimately associated with the judicial phase of the *criminal* process." *Imbler*, 424 U.S. at 430 (emphasis added). Defendants therefore try to analogize this case to *Butz*, where absolute immunity was extended in the civil context to "functions analogous to those of a prosecutor." *Butz*, 438 U.S. at 515. We conclude that Defendants' actions here were not "analogous to those of a prosecutor" for two reasons. *See id.*

First, the federal RICO statute does not provide any special authorization for county attorneys to file civil RICO suits. County attorneys may file civil RICO suits under 18 U.S.C. § 1964(c), but they have no status as plaintiffs different from private citizens. *Compare* § 1964(b) (authorizing the United States Attorney General to initiate a RICO suit), *with* § 1964(c) (authorizing "[a]ny person injured in his business or property" to sue under the RICO statute). As the district court noted, Thomas and Aubuchon were thus "in the same position as . . . private lawyers" in bringing the RICO suit. 869 F. Supp. 2d at 1056. This case is therefore distinguishable from all cited cases where a government attorney was granted absolute immunity. In those cases, the government attorney was taking action that only a legal representative of the government could take. *See, e.g.*, *Imbler*, 424 U.S. at 410 (criminal prosecution); *Butz*, 438 U.S. at 480 (federal agency enforcement action); *Fry*, 939 F.2d at 834 (civil tax collection proceeding); *Flood*, 532 F.2d at 1249 (same). Inasmuch as Defendants did not act in a uniquely governmental role in filing their civil RICO

suit, their actions were not "analogous to those of a prosecutor." *Butz*, 438 U.S. at 515.

Second, the circumstances of this case indicate that the civil RICO suit was not "analogous" to a criminal prosecution. Rather, Defendants filed the RICO suit as part of their long-running "political war" against members of the Board of Supervisors, judges, and others. The suit was essentially a harassing public-relations ploy. Defendants filed baseless criminal suits against Stapley and others both before and after filing the RICO suit, seeking media publicity for their actions in connection with these suits. Before initiating the civil RICO suit, Defendants received warnings from attorneys both inside and outside their office that the suit had no basis in fact or law and would likely result in sanctions. Defendants had also been warned of ethical conflicts related to filing the suit.

Defendants nonetheless filed the RICO suit, announcing it to the media immediately after filing. Then, before the court had any opportunity to assess its validity, Defendants voluntarily dismissed the suit. After dismissing the suit, Defendants held a press conference, announcing that the Department of Justice had agreed to investigate the RICO Lawsuit defendants. The DOJ had, in fact, made no such agreement, and it later announced that it was "dismayed to learn" of the press conference. Through these actions, Defendants deliberately "side-stepped the judicial process," like the prosecutor in *Lacey* who avoided judicial scrutiny and thereby lost the protections of absolute immunity. *Lacey*, 693 F.3d at 914.

We need not determine whether each of the distinguishing characteristics here, standing alone, would be sufficient to

defeat absolute immunity. We hold only that, under the circumstances presented here, Defendants are not entitled to absolute immunity because their actions were not sufficiently "analogous to those of a prosecutor." *Butz*, 438 U.S. at 515.

## Conclusion

We affirm the district court's denial of Defendants' motions to dismiss based on their asserted absolute immunity from claims arising out of their civil RICO suit.

**AFFIRMED.**