**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FREDDY JOE BURTON; JAN PAUL KOCH, | No. 12-15618 |
| *Plaintiffs-Appellees*, | D.C. No. 2:11-cv-01129-RCJ-PAL |
| v. | |
| INFINITY CAPITAL MANAGEMENT; ANNE PANTELAS; SALVATORE C. GUGINO, | AMENDED OPINION |
| *Defendants-Appellants*, | |
| and | |
| RONALD J. ISRAEL, | |
| *Defendant*. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Chief District Judge, Presiding

Argued and Submitted November 7, 2013
San Francisco, California

Filed June 4, 2014
Amended July 10, 2017

Before: Sidney R. Thomas, Chief Judge, Ronald Lee Gilman[*], and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Chief Judge Thomas

---

## SUMMARY[**]

---

### Bankruptcy

The panel filed an amended opinion, affirming the district court's denial of a defendant's motion for summary judgment and holding that an attorney was not entitled to absolute quasi-judicial immunity on a claim of violation of the automatic stay provision of the Bankruptcy Code.

---

### COUNSEL

Kenneth R. Lund (argued) and Brian K. Terry, Thorndal Armstrong Delk Balkenbush & Eisinger, Las Vegas, Nevada, for Defendant-Appellant Salvatore C. Gugino.

Daniel R. McNutt (argued), Carbajal & McNutt LLP, Las Vegas, Nevada, for Defendants-Appellants Infinity Capital Management and Anne Pantelas.

---

[*] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jan Paul Koch (argued), Law Office of Jan Paul Koch, Las Vegas, Nevada; Robert J. Kossack, Kossack Law Offices, Las Vegas, Nevada, for Plaintiffs-Appellees Freddy Joe Burton and Jan Paul Koch.

## OPINION

THOMAS, Chief Judge:

This case requires us to decide whether an attorney sued for violation of a bankruptcy automatic stay is entitled to absolute quasi-judicial immunity.  Under the circumstances presented by this case, we hold that he is not.  We affirm the judgment of the district court, albeit on different grounds.

### I

Freddy Joe Burton ("Burton") was injured in a bicycle-automobile collision.  He incurred $271,101.87 in related medical expenses and loans and retained Jan Paul Koch ("Koch") to file a lawsuit on his behalf.  Burton granted certain creditors, including Valley Hospital Medical Center, liens on his personal injury claim.  Valley Hospital then sold its account receivable to Infinity Capital Management ("Infinity"), the president of which is Anne Pantelas ("Pantelas").  Koch settled Burton's personal injury claim for $185,000.

Koch placed the settlement funds in his client trust fund account and paid himself his attorney fee and costs.  Koch then recommended that Burton declare bankruptcy and hire bankruptcy attorney David Crosby.  After paying a retainer fee to Crosby and receiving his personal injury settlement

exemption, Burton had $104,088.10 left of his settlement in the trust fund account.

That same month, Nancy Alf, who represented Infinity at the time, told Koch that a state interpleader action would resolve the interests of the lien holders more quickly than the bankruptcy court. Infinity filed an interpleader lawsuit in state court against all other similarly situated lien holders making a claim upon Burton's settlement. Neither Burton nor Koch was named as a party in the state interpleader case. The Honorable Ronald Israel was assigned to the case. Salvatore Gugino was substituted for Alf as Infinity's attorney of record.

Crosby filed Burton's bankruptcy petition in bankruptcy court. Four days later, Judge Israel held a status hearing on the state interpleader case, and Koch attended that hearing at Judge Israel's request. At the hearing, Gugino appeared for Infinity, and Steven Baker appeared for one of the defendants in the case. Judge Israel questioned Koch as to why he had not interpled all of the funds that Burton had received for his settlement to the court clerk as required by *Michel v. Eighth Judicial District Court ex rel. Cnty. of Clark*, 17 P.3d 1003 (Nev. 2001). Koch informed Judge Israel that Burton had filed for bankruptcy and that Koch would be depositing the remaining settlement funds with the bankruptcy clerk. Those present at the hearing were confused about the proper course to take given the bankruptcy proceeding and the fact that Burton was neither a plaintiff nor a defendant in interpleader. Both Gugino and Baker voiced concern about the interpleader case moving forward in light of the bankruptcy. Judge Israel ordered the parties to appear approximately two months later for a status hearing regarding the state of the bankruptcy proceeding.

Three days before the status hearing, Gugino sent all parties to the interpleader case and Koch a letter with a copy of the minutes from the prior hearing and an update on the bankruptcy case, including both an explanation of his initial attempt to resolve the interpleader issue with the trustee and confirmation that Koch had deposited the settlement funds with the trustee.

Koch did not appear at the status hearing. At the hearing, Gugino handed a copy of his letter to Judge Israel, and he informed the court that Koch had deposited the settlement funds with the bankruptcy trustee. Judge Israel responded, "I ordered Mr. Koch to place all the funds in here. . . . I'm going to issue an order to show cause. I want Mr. Koch to appear and show – tell us why he didn't deposit his attorney's fees into – pursuant to *Michel*. . . . I want him to personally appear and tell why he hasn't; otherwise, I'll hold him in contempt." Neither Gugino nor Baker voiced any opposition to Judge Israel in light of the bankruptcy. In response to the court's inquiry, Gugino volunteered to prepare an order for Koch to show cause why he should not be held in contempt for failure to comply with *Michel* as ordered by the state court.

On the same day, Gugino prepared a proposed order to show cause and sent it to all of the interpleader parties and Koch. A cover letter stated that, unless Gugino heard from them to the contrary, he would assume it met with their approval and would submit it to the court for the judge's signature. The proposed order directed Koch to appear "to explain to [the court] why he should not be held in contempt for failure to comply with *Michel* . . . as directed by [the court]." That same day, Koch replied by sending Gugino a

fax objecting to the order and stating, "You are violating the automatic stay provisions of 11 U.S.C. § 362."

Koch alleges that he telephoned Gugino to object to the order to show cause and that Gugino asked if Koch were ready to be held in contempt, "with Gugino making it clear to Koch that unless the Burton personal injury settlement funds were not interpled . . . in the state interpleader action, that he (Gugino) would make all necessary efforts to have Koch held in contempt of court."

The following day, Koch sent Gugino a fax and a four-page letter. The letter stated that the automatic stay prevented proceedings directed toward the property of the bankruptcy estate, threatened that he would file a complaint against Gugino, Infinity, Pantelas, and Judge Israel if "at any time [he] bec[a]me aware of further action in the Infinity litigation (pursued by *anyone*)," and made personal attacks on Gugino's competency. The fax stated that the complaint was "90% complete" and included a draft copy of the seven-page complaint.

The order drafted by Gugino was never filed. Instead, Judge Israel faxed the minute order from the June 6th status check hearing to the parties of the interpleader case and Koch. The minute order stated:

> Mr. Gugino noted the letter provided to the Court changes things. Mr. Gugino further noted Mr. Koch took the remaining money and gave it to the bankruptcy trustee. Colloquy regarding Mr. Koch not present today and issues regarding following the *Michel* Case. Court directed Counsel to

prepare an order for a show cause hearing and Court set hearing.

. . . .

COURT ORDERS All parties to appear, including Mr. Koch, to advise the Court of;

1. The bankruptcy.

2. Why the bankruptcy can effect [sic] and stay these proceedings, since Mr. Burton is not a party to this action.

3. Why Mr. Koch should interplead the entire proceeds of the settlement per the *Michel* case into this court immediately.

4. Status on lifting the stay.

COURT ORDERED Matter re-set from a show cause hearing to a Status Check regarding: bankruptcy / interpleader.

Later that day, Gugino faxed a letter to Koch that included the minute order. The letter stated in part:

First, let me make it clear that you did not attend the June 6, 2011 status check before Judge Israel, even though you were aware of the hearing date. Had you been present, all of this might have been avoided. At the hearing, I presented the Court with my June 3, 2011 letter and attachments, which had been

previously sent to you and the attorneys involved in this litigation. It was my expectation that we would be going forward in the Bankruptcy Court under some sort of stipulation and order. However, at the hearing, Judge Israel ordered that an Order To Show Cause be issued against you, and he then directed me to prepare the Order. This was not my idea, nor did I recommend it to the Court. After preparing a draft of the proposed Order, I sent it to your attention for your review. Had you called me upon receipt, you could have avoided incurring the hours you claim to have spent preparing a class action complaint against my client, her company, myself and Judge[] Israel . . . .

Later that same day, Koch faxed a response to Gugino stating, "In response to your 6-9-11 letter . . . . Attached hereto please find the rough draft of the Federal Lawsuit that I am filing."

The following day, Koch sent Gugino a copy of a Memorandum in Support of Jurisdiction by fax and stated in part, "Why don't you dismiss the interpleader, and get your funds from the bankruptcy trustee? Otherwise, what do you suggest? I'll hold up and won't send copies to Judge Israel, pending your reply."

Nearly a month later, Koch sent Gugino a fax stating, "Don't know why you never responded to my last entreaty. Guess it matters not. It's been filed. Here's a copy. See ya in Court."

Koch then filed a complaint in federal district court, on behalf of himself and Burton, alleging that all defendants violated the automatic-stay provision of 11 U.S.C. § 362(a). He claimed actual damages of $1,000, plus attorney fees, and sought "damages in excess of $10,000." He alleged that the state judge's actions in setting hearings, making comments in court, and directing that an order be prepared violated the automatic stay. He alleged that Gugino violated the stay by advocating that the funds that formed part of the property of the bankruptcy estate be ordered interpled in state court, urging that Koch should show cause why he should not be held in contempt for not interpleading the funds, circulating the draft order to show cause, telephoning Koch and threatening him that he would "make all necessary efforts to have Koch held in contempt of court," and taking other actions to collect the property.

Judge Israel filed a motion to dismiss the complaint, arguing that Koch's claims were barred as a matter of law by the doctrine of absolute judicial immunity. Gugino filed a separate motion to dismiss, arguing that because his acts were taken under the direction of Judge Israel, Koch's claims were barred by the doctrine of absolute quasi-judicial immunity. The district court converted both motions to dismiss into motions for summary judgment because the parties attached various exhibits outside of the pleadings. The court held that Judge Israel was entitled to absolute judicial immunity, but that Gugino was not, and denied Gugino's motion for summary judgment. The district court noted that Gugino had volunteered to draft the order and had violated his affirmative duty to alert the court as to the conflict between the proposed

order and the automatic stay.[1]  This interlocutory appeal followed.  *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (holding that denial of a substantial claim of absolute immunity is an order appealable before judgment).

We review a district court's order denying a converted motion for summary judgment *de novo*.  *Lewis v. United States*, 641 F.3d 1174, 1176 (9th Cir. 2011).  We must view the evidence in the light most favorable to the nonmoving party.  *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  The proponent of a claim for absolute immunity "bears the burden of establishing that such immunity is justified."  *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 947 (9th Cir. 2002).

II

A

The filing of a bankruptcy petition creates a bankruptcy estate, which is protected by an automatic stay of actions by all entities to collect or recover on claims. 11 U.S.C § 362(a). "The automatic stay is self-executing, effective upon the filing of the bankruptcy petition."  *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) (en banc).

As we have noted, "[t]he scope of the stay is quite broad." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d

---

[1] The district court properly held that the attorney did not violate the stay by seeking a status check or attempting to resolve the conflicts between the interpleader and the bankruptcy, actions which occurred prior to the status hearing.

581, 585 (9th Cir. 1993). It is designed to provide breathing space to the debtor, prevent harassment of the debtor, assure that all claims against the debtor will be brought in the sole forum of the bankruptcy court, and protect creditors as a class from the possibility that one or more creditors will obtain payment to the detriment of others. *Id.* at 585–86. The stay "prevents any collection activity against property of the estate." *Temecula v. LPM Corp. (In re LPM Corp.)*, 300 F.3d 1134, 1136 (9th Cir. 2002). It applies to "almost any type of formal or informal action against the debtor or property of the estate." *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552 n.4 (9th Cir. 1988). The automatic stay "imposes an affirmative duty to discontinue post-petition collection actions." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). Any continuation of a collection action against the debtor or property of the estate after a bankruptcy filing constitutes a violation of the stay. *Id.* at 1214. Indeed, the Bankruptcy Code requires parties to "automatically dismiss or stay such proceeding." *Id.* And, as the district court noted, "the automatic stay imposes on non-debtor parties an affirmative duty of compliance," which includes alerting the court of potential conflicts between an order and the automatic stay. *Sternberg v. Johnson*, 595 F.3d 937, 943 (9th Cir. 2010), *overruled on other grounds by Am. Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015) (en banc).

Actions taken in violation of the automatic stay are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). This rule applies to judicial proceedings. *Gruntz*, 202 F.3d at 1082; *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125 (9th Cir. 1989). "Any state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy

court's jurisdiction to enforce the stay." *Gruntz*, 202 F.3d at 1082.

## B

The complaint filed in this case asserted, among other theories, that attorney Gugino committed a number of acts in violation of the automatic stay. Gugino moved to dismiss on the basis of quasi-judicial immunity, arguing that his actions were taken at the direction of the judge.

Absolute judicial immunity "insulates judges from charges of erroneous acts or irregular action." *Castillo*, 297 F.3d at 947 (citing *Forrester v. White*, 484 U.S. 219, 227–28 (1988)). Absolute immunity "is not reserved solely for judges, but extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)). "The Supreme Court has been quite sparing in its recognition of absolute immunity, and has refused to extend it any further than its justification would warrant." *Id.* (internal quotation marks and alterations omitted). The justification for absolute immunity is the protection of the judicial process. It shields independent and impartial adjudication and prevents the "deflection of [an officer's] energies from his public duties." *Burns*, 500 U.S. at 485. The touchstone for its applicability is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993) (quoting *Burns*, 500 U.S. at 500 (Scalia, J., concurring in part and dissenting in part)). The Supreme Court has "made it clear that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting

its occupant, that is of primary importance." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Thus, we take a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-judicial immunity by looking to "the nature of the function performed and not to the identity of the actor performing it." *Castillo*, 297 F.3d at 948. To qualify for absolute immunity, the function performed must be a judicial act with "a sufficiently close nexus to the adjudicative process." *Id.* However, "it is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." *Id*. at 949. The Supreme Court established the requirement for discretionary judgment in *Antoine*, where it declined to extend the immunity to court reporters because transcribing verbatim transcripts does not involve the level of authoritative or "discretionary decisionmaking that the doctrine of judicial immunity is designed to protect." 508 U.S. at 435. To be protected, the function performed must "involve the exercise of discretion in resolving disputes." *Castillo*, 297 F.3d at 948 (citing *Antoine*, 508 U.S. at 435).

Before turning to the functional approach, we first inquire into the immunity historically accorded attorneys. *Id.* We have afforded quasi-judicial immunity to bankruptcy trustees because they were exercising judgments while performing acts closely related to the judicial process. *Id*. at 946–47; *see also Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) (holding that "a trustee in bankruptcy . . . is entitled to derived judicial immunity because he is performing an integral part of the judicial process"). For similar reasons, we afforded United States Trustees quasi-

judicial immunity. *Balser v. Dep't of Justice*, 327 F.3d 903, 910 (9th Cir. 2003). Absolute immunity has been extended to attorneys for performing the duties of a prosecutor. *Butz v. Economou*, 438 U.S. 478, 517 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Stapley v. Pestalozzi*, 733 F.3d 804, 811–12 (9th Cir. 2013). Prosecutors enjoy immunity when they take "action that only a legal representative of the government could take." *Stapley*, 733 F.3d at 812. However, the Supreme Court has not extended the immunity beyond the prosecutorial function. *Id.* at 811–12. Even court-appointed defense attorneys do not enjoy immunity because, despite being "officers" of the court, "attorneys [are not] in the same category as marshals, bailiffs, court clerks or judges." *Ferri v. Ackerman*, 444 U.S. 193, 202 n.19 (1979). In *Ferri*, the Supreme Court declined to extend immunity to defense attorneys because "the primary office performed by appointed counsel parallels the office of privately retained counsel" where an attorney owes a duty to his client, not the public. *Id.* at 204. This implied disinclination to grant immunity to private counsel was solidified after the Supreme Court concluded that "private actors are not entitled to the absolute immunity granted to some government officials, such as prosecutors and judges." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (citing *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992)).

Not only does this precedent caution against extending absolute quasi-judicial immunity to Gugino, but the functional approach, which requires us to look past his identity as an attorney and focus only on the function that he performed, also precludes the extension of immunity. The parties focus on the attorney's actions in drafting the order at the behest of the judge, or volunteering to draft it. However, the order was never filed nor formalized, so it is not relevant

to the question of extending quasi-judicial immunity to Gugino. Rather, we need only decide whether, under the circumstances presented by this case, Gugino is entitled to quasi-judicial immunity for acts other than drafting the order. Applying our precedent, we cannot extend quasi-judicial immunity to include those acts. Thus, any actions that he took independently of drafting the order to attempt to collect the debt were not adjudicatory acts "involv[ing] the exercise of discretion in resolving disputes," *Castillo*, 297 F.3d at 948, or acts "authoritatively adjudicating private rights," *Antoine,* 508 U.S. at 435–36. In short, quasi-judicial immunity does not extend to acts of private advocacy or attempted debt collection because such acts are distinct from the judicial function.

IV

On the narrow question presented by this interlocutory appeal, we conclude that Gugino is not entitled to quasi-judicial immunity for acts other than drafting the order at the judge's request—an issue we need not reach because the order was never filed. And we need not, and do not, reach any other issue urged by the parties.

**AFFIRMED.**